IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DIAMOND JARAMILLO,

      Plaintiff,

v.                                                                 No. CIV 20-1286 RB/KRS

Officer CHRISTOPHER PADILLA,
and Captain ROBERT GONZALES,
in their individual capacities,

      Defendants.

## MEMORANDUM OPINION AND ORDER

      Defendant Christopher Padilla, formerly a correctional officer (CO) at the Springer Correctional Center (SCC), used his position of power to sexually abuse Plaintiff Diamond Jaramillo over a period of six months. An investigation concluded that Jaramillo's allegations against Padilla are founded, and SCC terminated Padilla's employment. Jaramillo brings suit against Padilla and Defendant Robert Gonzales, who at the time of the abuse was both Chief of Security at SCC and Acting Warden. At issue in this opinion are Gonzales's motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) and on the basis of qualified immunity. For the reasons discussed below, the Court will deny both motions.

**I.    Background**

<u>Sexual Abuse Allegations</u>

      Jaramillo was incarcerated at SCC in Grants, New Mexico. (Doc. 1-A (Compl.) ¶¶ 3, 11, 73.) From October 2018 through March 2019, Jaramillo worked under Padilla's supervision in the maintenance department of SCC. (*Id.* ¶ 73.) During that time, "Padilla . . . groped, touched, and molested" Jaramillo. (*Id.*) Padilla perpetrated the sexual abuse in areas of SCC that did not contain

cameras, such as in Padilla's maintenance office, one of the facility's tool sheds, and the facility boiler room. (*Id.* ¶ 79.)

Padilla's Employment and History of Sexual Abuse of Inmates at SCC

"Padilla applied for employment at SCC in the summer of 2015." (*Id.* ¶ 23.) SCC administration had notice, based on background check results, "that Padilla had been accused of inappropriately touching a child" in California. (*Id.* ¶ 24.) Despite this knowledge, SCC hired Padilla as a CO beginning in June 2015. (*Id.* ¶ 25.)

SCC began to house female inmates in October 2016. (*Id.* ¶ 27.) "Padilla has stated that, in his own opinion, SCC did not provide him with sufficient training prior to and during the transition to prepare him to properly carry out his duties as a [CO] supervising female inmates." (*Id.* ¶ 28.) In December 2016, Padilla managed the SCC kitchen and the inmates who worked there. (*Id.* ¶ 29.) While he managed the kitchen, up to seven female inmates alleged that Padilla sexually abused them.[1] (*Id.* ¶¶ 33–34.) The New Mexico State Police (NMSP) investigated at least three of these inmates' allegations, including Christina Martinez, Rebecca Martinez, and Dawn Green.[2] (*Id.* ¶¶ 37, 42, 51, 53.)

In March 2017, "Padilla was promoted to a supervisory position in which he was responsible for all maintenance, repairs, inventory[,] and purchase requests at SCC." (*Id.* ¶ 40.) In this position, Padilla supervised female inmates and had "full access to the entire SCC grounds." (*Id.* ¶¶ 41, 55.) Padilla knew that several areas, including his maintenance office and the shed, did not have security cameras and were thus "blind spots" that went unmonitored. (*Id.* ¶ 57.) Padilla

---

[1] The allegations regarding dates are inconsistent. Jaramillo alleges that SCC began to house female inmates in October 2016 but also alleges that a female inmate made allegations against Padilla in August 2016. (*See* Compl. ¶¶ 27, 37.)

[2] Both Rebecca Martinez's and Green's allegations are the subject of pending lawsuits. (*Id.* ¶¶ 43, 52.)

abused Jaramillo in these and other locations. (*Id.* ¶ 58.)

In January 2019, "Padilla was caught drinking on the job." (*Id.* ¶ 65.) As a result, Padilla received a three-day suspension over three months after the incident. (*Id.* ¶ 67.) SCC administrators (including Gonzales) allegedly delayed the discipline "to protect [Padilla] and because they needed him to do work on ongoing projects . . . and didn't want him to be out for three days." (*Id.* ¶ 69.)

Allegations against Gonzales[3]

In December 2016 Gonzales, who was then a Captain and Chief of Security, "was in charge of overseeing all security aspects of the prison." (*Id.* ¶ 32.) He was also Padilla's direct supervisor when Padilla managed the kitchen. (*Id.* ¶¶ 30–31.) Because of his role as Chief of Security, Gonzales was aware of the allegations against Padilla that stemmed from Padilla's work in the SCC kitchen. (*Id.* ¶ 36.)

When the NMSP investigated Rebecca Martinez's allegations against Padilla in March 2017, the investigating officer interviewed Gonzales. (*Id.* ¶ 44.) Although Gonzales was aware of past allegations against Padilla, he told the "officer that Padilla had just been promoted to Maintenance Supervisor and that the administration had never had any problems or issues with Padilla in the past." (*Id.* ¶¶ 45–46 (quotation marks omitted).) Gonzales was also aware of the NMSP investigation into Green's allegations against Padilla. (*Id.* ¶ 53.)

Gonzales's responsibilities included referring "allegations of sexual misconduct to the [New Mexico Corrections Department Office of Professional Standards (OPS)][4] for investigation,

---

[3] Jaramillo asserts generally that "SCC has been woefully understaffed for the entire duration that it has served as a women['s] prison." (*Id.* ¶ 14.) It also has a shortage of female COs. (*Id.* ¶ 19.) Poor management and a lack of discipline "has led to an environment where sexual abuse is rampant." (*Id.* ¶ 20.)

[4] The Complaint refers to the "Office of Professional Responsibility" and the "OPS" in the same paragraph. (Compl. ¶ 48.) It is unclear if this is the same office as the "NMCD Office of Professional Standards" referenced two paragraphs later. (*Id.* ¶ 50.)

meaning that he had unquestionably made referrals" regarding the allegations against Padilla during the time period relevant to this Complaint. (*Id.* ¶ 48.) Gonzales has confirmed that he referred Martinez's allegations to the OPS. (*Id.* ¶ 50.)

Gonzales was aware that female inmates had repeatedly alleged that Padilla assaulted them in private locations "outside the view of the facility's cameras." (*Id.* ¶ 54.) Notwithstanding this knowledge, "Gonzales acted to promote or support the promotion of Padilla to maintenance supervisor," where Padilla would have unrestricted access to the SCC grounds. (*Id.* ¶ 55.) Gonzales also knew that the maintenance office and shed did not have security cameras. (*Id.* ¶ 57.)

Gonzales served as Acting Warden of SCC from July 2018 through April 2019. (*Id.* ¶ 62.) His duties included recommending and imposing discipline on SCC staff. (*Id.* ¶ 63.) Gonzales remained in his role as Chief of Security during this time. (*Id.* ¶ 64.) Gonzales was responsible for disciplining Padilla when he was caught drinking in January 2019. (*Id.* ¶¶ 65, 68.)

Jaramillo reported her own abuse in August 2019. (*Id.* ¶ 70.) The New Mexico Corrections Department investigated Jaramillo's allegations, and Padilla was eventually terminated in February 2020. (*Id.* ¶¶ 83, 87.) Jaramillo alleges that until she reported Padilla's abuse in August 2019, Padilla was never disciplined or reassigned as a result of the other inmates' earlier allegations. (*Id.* ¶¶ 39, 70.)

Jaramillo filed suit in this Court in December 2020. (Doc. 1.) She brings three claims: (I) cruel and unusual punishment in violation of the Eighth Amendment against Padilla and Gonzales; (II) intentional tort claims against Padilla; and (III) negligent operation or maintenance of a public facility under the New Mexico Tort Claims Act, N.M. Stat. Ann. § 41-4-6, against Gonzales. (*Id.* ¶¶ 89–101.) Gonzales moves to dismiss counts I and III both for failure to state a claim under Rule 12(b)(6) and on the basis of qualified immunity. (Docs. 7; 26.)

## II. Legal Standards

### A. Motions to Dismiss under Rule 12(b)(6)

In reviewing a motion to dismiss under Rule 12(b)(6), the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1108 (10th Cir. 2015) (citation omitted). To survive a motion to dismiss, the complaint does not need to contain "detailed factual allegations," but it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).

### B. Qualified Immunity

"In assessing a qualified immunity defense" in the context of a motion to dismiss, the Court "must determine whether the plaintiff pled facts indicating: (1) the defendant violated a statutory or constitutional right and (2) that right was 'clearly established' at the time of the challenged conduct." *Crall v. Wilson*, 769 F. App'x 573, 575 (10th Cir. 2019) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). Courts may address the prongs of this analysis in either order; if the plaintiff fails to meet his burden on either prong, the defendant prevails. *See Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir.), *cert. denied*, *Cummings v. Bussey*, 140 S. Ct. 81 (2019).

## III. Analysis of Count I: Cruel and Unusual Punishment in Violation of the Eighth Amendment

### A. Jaramillo has plausibly alleged an Eighth Amendment claim against Gonzales.

Jaramillo asserts an Eighth Amendment claim under 42 U.S.C. § 1983 for supervisory liability against Gonzales. "[A]n inmate has a constitutional right to be secure in her bodily integrity and free from attack by prison guards." *Keith v. Koerner*, 843 F.3d 833, 837 (10th Cir.

2016) (quotation omitted). "Because vicarious liability is inapplicable to . . . § 1983 suits," Jaramillo must plead factual allegations to show that Gonzales, through his own actions, violated her constitutional rights. *See id.* at 838 (quoting *Iqbal*, 556 U.S. at 676). To do so, Jaramillo "'must show an affirmative link between [Gonzales] and the constitutional violation,' which requires proof of three interrelated elements: (1) personal involvement; (2) causation; and (3) state of mind." *Id.* (quoting *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013)) (quotation marks omitted). The third prong—culpable state of mind—can be established by showing that the official "acted with deliberate indifference." *See Perry v. Durborow*, 892 F.3d 1116, 1122 (10th Cir. 2018) (quotation omitted).

Gonzales first moves to dismiss Count I for failure to state a claim. (*See* Doc. 7 at 4–6.) He argues that the language in Count I of Jaramillo's Complaint fails to show that *Gonzales's* conduct violated Jaramillo's rights and instead lumps the conduct of the two Defendants together. (*Id.* at 5–6.) He contends that the allegations imply that *both* Defendants sexually assaulted Jaramillo and fail to demonstrate how he, in his role as Chief of Security or Acting Warden, violated her rights. (*Id.*) The Court agrees that the language in the paragraphs under Count I itself is not exceedingly clear. In these paragraphs, Jaramillo asserts that through the "sexual assault and the continuing, daily threat of renewed assaults, . . . Defendants violated [her] right to be afforded a reasonable degree of safety from serious bodily attack and to be secure in [her] bodily integrity." (Compl. ¶¶ 90–91 (citation omitted).) She contends that Defendants "assault[ed her] and violat[ed] her clearly established constitutional rights . . . in a manner that was objectively unreasonable, intentional, willful, and wanton, and . . . in gross and reckless disregard of [her] rights." (*Id.* ¶ 92.) Reading the Complaint as a whole, however, makes Jaramillo's allegations against Gonzales sufficiently clear to put him on notice of the supervisory liability claim under the Eighth Amendment.

1.      **Personal Involvement**

Jaramillo alleges that Gonzales, as Chief of Security and Padilla's supervisor, and later as Acting Warden, had personal knowledge of Padilla's history and pattern of sexual abuse of inmates he supervised. (*See, e.g.*, Compl. ¶¶ 30–36; Doc. 10 at 11.) Gonzales had been interviewed in the NMSP investigations of the inmates' allegations and had downplayed complaints about Padilla. (*See* Compl. ¶¶ 37, 42, 44, 46.) Gonzales had also promoted or supported the decision to promote Padilla to maintenance supervisor thereafter, with the knowledge that Padilla would have access to areas of SCC that were unmonitored by cameras, facilitating his further abuse of inmates. (*Id.* ¶¶ 55–57.)

Gonzales does not argue that these factual allegations are insufficient to meet the personal involvement prong. (*See, e.g.*, Doc. 17 at 5–6.) Rather, he argues that the language within Count I itself is insufficient to allege an Eighth Amendment claim. (*See id.*) Yet, the Court is not limited to reading the paragraphs immediately under the Count I heading but can consider the factual allegations of the Complaint as a whole. Jaramillo has sufficiently alleged Gonzales's personal involvement throughout her Complaint.

2.      **Causation**

"The second element of the 'affirmative link' between a supervisor and an alleged constitutional deprivation requires proof of causation." *Keith*, 843 F.3d at 847. "A plaintiff must establish the 'requisite causal connection' by showing 'the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights.'" *Id.* (quoting *Schneider*, 717 F.3d at 768). In *Keith*, the Tenth Circuit affirmed that "a supervising official's management actions may be sufficient to establish causation." *Id.* There, the plaintiff alleged that the warden knew of and failed to respond

to the misconduct of a prison employee, overlooked known problems, and generally failed to enforce prison policies. *See id.* at 840, 847. These allegations were enough to establish causation. *Id.* at 847.

Here, Jaramillo alleges that Gonzales's failure to take action against Padilla in the face of his known pattern of sexual assault, along with his support of Padilla's promotion to maintenance supervisor, led to Padilla's assault on her. These allegations are sufficient to show causation.

### 3. State of Mind

Finally, Jaramillo must show that Gonzales acted with deliberate indifference; that is, she must allege that Gonzales was actually "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [that] he . . . [drew] the inference." *See id.* at 847–48 (quoting *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008)). "To satisfy this standard, the plaintiff must produce 'evidence showing that the defendant knowingly created a substantial risk of constitutional injury.'" *Id.* (quoting *Schneider*, 717 F.3d at 769). The Tenth Circuit has found that "[i]naction, in certain instances, can be enough"; for example, if the official knows "of a substantial risk of serious harm" and "fails to take reasonable steps to alleviate that risk." *Id.* (citations and quotation marks omitted). In *Keith*, for example, the plaintiff alleged that the warden was aware of inmates' allegations regarding the prison employee's abuse but did not believe or act on them. *See id.* at 849. Together with the warden's failure to enforce policies to keep inmates safe from abuse, the court found the allegations sufficient to meet the third prong. *See id.*

The facts here are similar to those in *Green v. Padilla*, the lawsuit involving inmate Green, mentioned above, against Padilla, Gonzales, and other SCC officials. *See* 484 F. Supp. 3d 1098 (D.N.M. 2020). The language in Green's complaint is strikingly similar to that in Jaramillo's Complaint. (*Compare* Compl. ¶¶ 89–94, *with Green v. Padilla*, 19cv0751, Compl. ¶¶ 143–48

(D.N.M. Aug. 15, 2019).) This is not surprising, as Green and Jaramillo share the same attorneys. (*See* Compl. at 13; *Green*, 19cv0751, Compl. at 16.) In deciding the *Green* defendants' motion to dismiss, the court found that Green had plausibly alleged facts to make out a supervisory liability claim against the warden under the Eighth Amendment, despite the less-than-ideal language in Count I itself. *See* 484 F. Supp. 3d at 1155 ("In parsing out individual sentences to construe those claims as conclusory, the Supervisory Defendants do what the Tenth Circuit concluded is incompatible with notice pleading -- they read factual allegations in isolation, rather than in the Complaint's context.") (citing *Ullery v. Bradley*, 949 F.3d 1282, 1288 (10th Cir. 2020)).

Here, Jaramillo has alleged facts to show Gonzales knew of Padilla's predilection for sexually abusing inmates. (*See, e.g.*, Compl. ¶ 36.) Despite this knowledge, Gonzales made statements to the NMSP investigating officer that downplayed Padilla's history and later supported his promotion to an area that would give him access to inmates in unmonitored areas. (*Id.* ¶¶ 45, 55.) Jaramillo's allegations are enough to meet her burden under the Rule 12(b)(6) standard. Thus, the Court denies Gonzales's motion to dismiss for failure to state a claim on this issue.

**B.     Gonzales is not entitled to qualified immunity.**

In arguing that he is entitled to qualified immunity for the Eighth Amendment claim, Gonzales contends that the allegations regarding his personal involvement are too speculative. (Doc. 26 at 4.) He emphasizes that Jaramillo must allege facts to show that he was "subjectively conscious of the risk of constitutional injury." (*Id.* at 6 (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).) In his view, Jaramillo has merely alleged that Gonzales "must have known of the risk of assault to her[,]" which is "inadequate to show that he had a culpable state of mind." (*Id.*)

As explained above, the Court finds that Jaramillo's allegations are more than mere legal conclusions; rather, she has met her burden to allege facts to demonstrate that Gonzales's own

conduct violated her constitutional rights. Jaramillo alleges that Gonzales knew, because of his roles as Chief of Security and Acting Warden, that up to seven inmates made allegations that Padilla sexually assaulted them. Rather than acting to protect the inmates, discipline Padilla, or adequately staff SCC, Gonzales allowed Padilla to be promoted to a position where he would have access to inmates in areas unmonitored by security cameras. These facts adequately show that Gonzales was subjectively aware of a risk of serious harm to female inmates, including Jaramillo, and failed to take action to protect the inmates. Jaramillo plausibly alleges that Gonzales consciously disregarded Padilla's pattern of abuse and the risk to other inmates, and thus establishes a claim for supervisory liability under the Eighth Amendment. Gonzales does not argue that Jaramillo's rights were not clearly established. Accordingly, the Court finds that Gonzales is not entitled to qualified immunity and will deny the motion on this issue.

**IV.     Analysis of Count III: Negligent Operation or Maintenance of a Public Facility**

In Count III (misidentified as Count IV in the Complaint), Jaramillo brings a claim under § 41-4-6 of the NMTCA. The NMTCA "shields 'governmental entities and public employees from tort liability unless immunity is specifically waived by' the" NMTCA. *Trujillo v. Salazar*, No. CIV-04-0689 JB/WDS, 2006 WL 1228827, at *5 (D.N.M. Mar. 1, 2006) (quoting *Archibeque v. Moya*, 866 P.2d 344, 346 (N.M. 1993)). "A plaintiff may not sue a governmental entity of New Mexico or its employees or agents unless the plaintiff's cause of action fits within one of the exceptions listed in the NMTCA." *Hunt v. Cent. Consol. Sch. Dist.*, 951 F. Supp. 2d 1136, 1193 (D.N.M. 2013) (citing *Begay v. New Mexico*, 723 P.2d 252, 256 (N.M. Ct. App. 1985) ("Consent to be sued may not be implied, but must come within one of the exceptions to immunity under the Tort Claims Act."), *rev'd on other grounds by Smialek v. Begay*, 721 P.2d 1306 (N.M. 1986)). Section 41-4-6(A) waives immunity "for damages resulting from bodily injury . . . caused by the

negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings." N.M. Stat. Ann. § 41-4-6(A).

Here, Jaramillo alleges that Gonzales "owed Plaintiff a duty to protect her health and safety in the operation and maintenance of SCC" but "breached this duty . . . by failing to ensure [she] was housed in a facility where she was not subjected to sexual abuse, coercion and harassment by [COs]." (Compl. ¶¶ 99–100.) Gonzales makes three arguments in favor of dismissal.[5] First, he again takes issue with the "bare-bones, formulaic, boiler-plate language" in the paragraphs under the Count III heading itself. (*See* Doc. 7 at 9.) The Court disagrees that this is a problem. "For the waiver to apply, the negligent 'operation or maintenance' must create a dangerous condition that threatens the general public or a class of users of the building." *Green*, 484 F. Supp. 3d at 1142 (quoting *Upton v. Clovis Mun. Sch. Dist.*, 141 P.3d 1259, 1261 (N.M. 2006)). "The waiver applies to more than the operation or maintenance of the physical aspects of the building, and includes safety policies necessary to protect the people who use the building." *Id.* at 1168 (quoting *Upton*, 141 P.3d at 1259). Jaramillo alleges that Gonzales owed her a duty to protect her from sexual assault, but his negligent actions created a dangerous condition that threatened the safety of female inmates with whom Padilla came in contact at SCC. (*See* 2d Am. Compl. ¶¶ 99–101.) Gonzales's alleged negligence included, for example, downplaying complaints about Padilla to the NMSP investigators, allowing Padilla to supervise inmates after multiple allegations had been made about him, allowing his promotion to maintenance supervisor where he would have access to unmonitored areas, and allowing SCC to be inadequately staffed. Reading the Complaint as a

---

[5] Gonzales essentially repeats these arguments in his second motion to dismiss. (*See* Docs. 26 at 3–4, 8; 30 at 5–7.) Accordingly, the Court analyzes the motions together.

whole, the Court finds that the allegations are sufficient to show that Gonzales had a duty to keep the SCC inmates safe, was aware of a dangerous condition, and failed to take action to keep the inmates safe from Padilla.

Gonzales next argues that Jaramillo's claim must fail because it is based on negligent supervision. (Docs. 7 at 10; 30 at 6–7.) A complaint alleging that "public employees negligently supervised persons in their care and that the resulting injury occurred on public property" is not actionable under the NMTCA. *Leithead v. City of Santa Fe*, 940 P.2d 459, 461 (N.M. Ct. App. 1997); *see also Upton*, 141 P.3d at 1263 (affirming that "the [NMTCA] does not specify a tort waiver for negligent supervision"). As Jaramillo explains, however, she is not simply claiming that Gonzales negligently supervised Padilla, but that Gonzales's inaction in the face of Padilla's known sexual abuse of inmates helped create the dangerous condition at SCC. (*See* Doc. 10 at 16.) She compares the facts here to the case of *Callaway v. New Mexico Department of Corrections*, 875 P.2d 393 (N.M. Ct. App. 1994). In *Callaway*, the court of appeals found that the plaintiff inmates had plausibly stated a claim under § 41-4-6 in showing that prison officials "knew or should have known that roaming gang members with a known propensity for violence had access to potential weapons in the recreation area, that such gang members created a dangerous condition on the premises of the penitentiary, and that the danger to other inmates was foreseeable." 875 P.2d at 399 (citation omitted). The Court agrees that *Callaway* is instructive. Jaramillo has plausibly alleged that Gonzales knew or should have known that Padilla's reputation for sexual abuse, coupled with his supervisory role and access to unmonitored areas, created a foreseeably dangerous condition for the female inmates at SCC.

Finally, Gonzales contends that Count III should be dismissed because the New Mexico Supreme Court has foreclosed claims brought under § 41-4-6 based on "the security, custody, and

classification of inmates." (Doc. 7 at 10 (quoting *Archibeque*, 866 P.2d at 347).) In *Archibeque*, the plaintiff inmate was transferred to a new facility. 866 P.2d at 346. Upon arrival, he met with an intake officer who asked if he had any known enemies at the new facility. *Id.* Archibeque disclosed one person (Gallegos), and the officer mistakenly assured him that Gallegos had been transferred. *Id.* Gallegos attacked Archibeque that night. *Id.* The state supreme court found that the officer "was not operating and maintaining the prison's physical premises when she negligently classified Archibeque as an inmate that could be released into the general prison population" but rather "was performing an administrative function associated with the operation of the corrections system." *See id.* at 347. The officer's mistake did not put the general prison population at risk, only Archibeque. *See id.*

The supervisory defendants in *Green* also argued that *Archibeque* foreclosed the inmates' claim under § 41-4-6. *See* 484 F. Supp. 3d at 1111–12. The court disagreed, noting that unlike in *Archibeque*, the supervisory defendants' alleged inaction in the face of known sexual assault amounted to a policy that created a dangerous condition at SCC. *Id.* at 1169–70. The same is true here. Jaramillo has not alleged that Gonzales negligently supervised Padilla or acted negligently in the security, custody, or classification of SCC inmates, but that he consciously disregarded the known risk of sexual assault Padilla presented to female inmates, creating a dangerous condition. These allegations are sufficient to state a claim under § 41-4-6, and Gonzales's motions to dismiss Count III are denied.[6]

**THEREFORE,**

---

[6] This ruling applies to Jaramillo's claim based on incidents that occurred after December 10, 2018. The parties have stipulated that Jaramillo is not entitled to damages for her claim under § 41-4-6 based on any incidents that occurred on or before December 10, 2018, as they are time-barred. (*See* Doc. 34.)

**IT IS ORDERED** that Defendant Robert Gonzales's Motion and Supporting Memorandum to Dismiss Counts I and III for Failure to State a Claim (Doc. 7) and Motion to Dismiss on Grounds of Qualified Immunity[7] (Doc. 26) are **DENIED**.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE

---

[7] The Court has already granted Gonzales's motion in part and stayed discovery pending a ruling on the motions to dismiss. (*See* Doc. 33.)